## Bailey et al. v. Fugate et al.

(Decided Nov. 4, 1937.)

GRANNIS BACH, and CALDWELL & GRAY for appellants.

H. C. FAULKNER and W. W. REEVES for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

W. T. Bailey, the Inland Gas Corporation, and W. F. Lockhart, both as receiver and trustee in bankruptcy of the Inland Gas Corporation, are appealing from a judgment in an action against them by Brice

Fugate, W. R. Smith, Elijah Hicks, and the Southeastern Gas Company, a corporation, wherein it was adjudged that plaintiffs collectively are the owners of all of a tract of land in Knott county containing 73.46 acres and all minerals, oil, and gas therein contained and that their title thereto be forever quieted against all claim of defendants and each of them and that the counterclaim of defendants be dismissed, etc.

As we gather from the record J. W. A. Draughn, generally known and to whom we shall refer as Walter Draughn, acquired title to the tract of land in controversy under patent from the commonwealth in January, 1888. At least there is no question made concerning his title to the tract of land in controversy and all parties are claiming as immediate or remote vendees under him. The claim of appellants to the oil, gas, and mineral rights referred to in the judgment is based on a deed purporting to have been made on March 31, 1888, wherein and whereby Walter Draughn and wife, V. C. Draughn, who is generally referred to in the record as Valeria Draughn, are alleged to have conveyed to J. M. Bailey all mineral, oil, and gas rights in the land and also some growing timber thereon. This deed was put to record on April 1, 1888, and is a most unique instrument in that it attempts to convey 18 tracts of land or minerals and timber interest therein and thereon owned by different persons, the conveyance by each individual owner being in a separate paragraph. The names of some of the grantors are signed at the end of the paragraph conveying their individual property, and some so signing and other grantors who did not sign at the end of the paragraph conveying their individual property signed or their names appear at the foot of the instrument. The names of Walter Draughn and wife are not affixed at the foot of the deed nor do their names appear in the certificate of acknowledgment, theirs being the only names omitted from the certificate out of about 30 grantors.

On January 9, 1904, J. M. Bailey executed and delivered to his son, W. T. Bailey, a deed purporting to convey all his property and holdings in Knott county which appellants claim embraced the mineral interest in the Draughn land, but about which the controversy is made. While the deed does purport to convey all property of the grantor in Knott county and specifically described by boundary or by reference to deed under

which the grantor acquired title over 30 different tracts, no reference is made to the Draughn tract nor, so far as we are able to ascertain, to any of the tracts described in the deed of March 31, 1888, whereby it is claimed that J. M. Bailey acquired the mineral interests in the Draughn tract. In 1924 W. T. Bailey and wife executed to Ward B. Allen a lease for the oil and gas on the Draughn tract, and, under assignments and transfers from Allen, renewal contracts, etc., whatever rights the lessor had passed to the Inland Gas Corporation and to W. E. Lockhart, as receiver and trustee in bankruptcy for the corporation. W. T. Bailey claims to own the mineral rights subject to the right acquired by the Inland Gas Corporation and its trustee in bankruptcy as above indicated.

Walter Draughn died intestate, and thereafter Brice Fugate, his son-in-law, by commissioner's deed and by deeds from various heirs of Walter Draughn, acquired title to the 73.46-acre tract or at least to the surface thereof. In 1894 Walter Draughn executed and delivered to Judge W. W. Baker a mortgage on the land in controversy to secure payment of a note for $126.70, and on February 15, 1899, Walter Draughn having previously died, Baker brought suit against his widow and heirs to recover on the note and to enforce his mortgage lien. In April, 1899, F. P. Allen and others filed an action in the Knott circuit court against the widow and heirs of Walter Draughn and against J. M. Bailey and W. W. Baker seeking to recover on a note for $200, which they held against the widow and heirs of Walter Draughn, and which was secured by a mortgage against the land of Walter Draughn. J. M. Bailey, who is an attorney, represented the plaintiffs in this action and in the petition made W. W. Baker and himself parties defendant. The petition referred to the suit of Baker in which he claimed he had a mortgage to secure the payment of a note for $126.70 but alleged that he had failed and refused to file such mortgage or to make the plaintiffs parties although acquainted with their claims. The petition further alleged in substance that Walter Draughn during his life had sold and conveyed to defendant Bailey all minerals, oil, and gas, etc., with the usual customary mining privileges on the land and that the latter was making claim thereto and it was asked that the defendants Bailey and Baker be compelled to set up their claims to the land, if any they had. Sum-

mons which issued on this petition was executed on all of the defendants, including Bailey, but he filed no answer or other pleading.

Thereafter the two actions were consolidated and Brice Fugate filed a petition to be made a party plaintiff and to be subrogated to the rights of plaintiffs in each of the actions alleging that he had paid the two notes and that they and the mortgages had been assigned and transferred to him by plaintiffs in respective actions. Thereafter, it was adjudged that Brice Fugate recover the sum of $126.70, with interest from July 29, 1894, and $200, with interest from July 29, 1899, and that he had a mortgage lien to secure these sums and that same be enforced and that the land in controversy be sold to satisfy the debts, interest, and costs. At the sale made by the master commissioner Brice Fugate became the purchaser of the land, and no question is made concerning the validity of the deed thereafter made to Fugate by the master commissioner pursuant to the judgment and orders of the court, the only question being whether the minerals, oil, and gas passed under the deed.

In their petition in equity appellees alleged in substance that they were the owners and entitled to possession of the land in controversy, and that appellants were making unfounded claim thereto or to the minerals thereon and thereby casting a cloud upon their title, and they asked that their title be quieted as against such claim.

By separate answer and counterclaim as amended W. T. Bailey and the receiver of the Inland Gas Corporation traversed the allegations of the petition and affirmatively alleged ownership to the mineral, oil, and gas on the land in themselves, asserting title under the deed from Walter Draughn and wife to J. M. Bailey dated March 31, 1888, hereinbefore referred to and subsequent conveyances, leases, assignments, etc., as above set out. They also pleaded that Brice Fugate had actual knowledge of the deed before he purchased the Draughn land and never at any time attacked the deed or took any steps or proceedings to have it set aside, although he knew that J. M. Bailey and his grantees were claiming thereunder and that the immediate and remote lessees of Fugate knew at the time they acquired their leases of the existence of the deed and the claim of

appellees; that, by reason of the laches, silence, speeches, and conduct on the part of plaintiffs, defendant believed that W. T. Bailey was the owner of the oil and gas on and under the land and on the strength of this belief purchased the oil and gas leases and had been for more than 10 years paying rentals, and that plaintiffs therefore were and should be estopped from making any claims to the oil and gas as against defendants. They further pleaded that plaintiffs' cause of action, if any, was barred by statute of limitation.

By reply as amended plaintiffs made a general denial of the affirmative allegations of the answer and counterclaim and affirmatively pleaded that the purported deed of March 31, 1888, from Walter Draughn and wife to J. M. Bailey was a forgery and that Draughn and wife did not sign or acknowledge it; that the deed was not a recordable instrument as against them because not acknowledged and therefore was no notice of the claim of Bailey to ownership of the minerals. They further pleaded by way of estoppel the judgment and proceedings in the consolidated actions above referred to, wherein the commissioner's deed was made to Fugate because of failure of J. M. Bailey to make any claim to the minerals on or in the land when called upon to do so, and in permitting judgment to be entered and deed to be made pursuant thereto without reservations or exceptions.

Because of our conclusions concerning appellees' plea of estoppel, we shall first give consideration to that phase of the case, since little need be said concerning other questions discussed in briefs. As will be noted from what we have already said, J. M. Bailey was the attorney for W. B. Allen and others in the consolidated actions against the widow and heirs of Walter Draughn to enforce the mortgage liens against the land. These mortgages did not purport to merely cover the surface, and there were no reservations or exceptions of minerals or mineral rights in either of them. Bailey prepared the pleadings in which he states in substance that Walter Draughn had conveyed the minerals to him and that he was making claim thereto. He was by the same pleading called upon to assert his claim, if any he had. No direct reference was made to any deed or instrument under which he claimed title nor was any such paper filed as an exhibit. The petition asked that the plaintiffs be adjudged a lien on the land and that it be sold

to satisfy such lien. He did not assert any claim to the minerals by pleadings or otherwise but permitted judgment to go and deed to be made to the purchaser thereunder without any reservation or exception of minerals. In such circumstances the purchaser who was also a party to the consolidated actions, and the attorney who represented him, clearly had a right to assume and act on the assumption that Bailey either had no interest or had abandoned any claim to the land.

It is not shown that Brice Fugate had actual notice or knowledge of the purported deed under which Bailey claimed title to the minerals; but if he had acquired such knowledge from his wife, who was the daughter of Walter Draughn, or from others, the conclusion is inescapable from the evidence that he would have also acquired knowledge that the validity of the deed was being questioned and knowledge of the latter fact would have been additional and strong reason for a conclusion that, by his failure to assert any right or title in the consolidated actions, J. M. Bailey had abandoned any and all claim he had acquired, or had been making, to any interest in the land.

In Neeley v. Guthrie, 236 Ky. 81, 32 S. W. (2d) 567, it appears that in a suit to settle a decedent's estate a survey of his land was ordered and the commissioner directed to sell it. It was held that although not a party to the action one who was making claim to the land by title paper as well as by adverse possession was estopped because of his knowledge of the proceedings to sell the land to settle the estate and by his presence when the survey was being made and when the land was being sold by the commissioner without asserting his claim or making any protest. To the same effect see Mullins et al. v. Robinson, 210 Ky. 461, 276 S. W. 156. But here we have a suit between the same parties or their privies in which the matter in controversy was presented by the pleadings and one of the parties was called upon to assert his claim thereto, and not only was he a party but an attorney for other parties and must have known and realized the effect of his failure to speak when called upon to do so. By his failure to speak, the court, other litigants, and his counsel were warranted in assuming that he had no valid claim and in entering judgment for the sale of the land without reservation or exception; and in such circumstances it is obvious that J. M. Bailey and those claiming under him

who are in privity with him were and are precluded by the judgment and the conveyances made pursuant thereto in the manner indicated.

In Clay v. Clay, 199 Ky. 4, 250 S. W. 829, 832, it is said:

"It is not essential to the creation of an adjudicata estoppel that the matter which the litigant is thereafter prevented from relitigating should be expressly discussed or settled in the determination of the first case from which the estoppel arose. It is only necessary that the matter should be presented by the pleadings in that case between the same parties, and it will be deemed as adjudicated between the parties when it is not mentioned as effectually as if it had been expressly determined."

It is true that in the case of Cox v. Simmerman, 243 Ky. 474, 48 S. W. (2d) 1078, it was held in effect that, where the basis for the claimed estoppel relied on is silence or omission, the party invoking the estoppel must have been without actual knowledge and without means of acquiring it, such as by public record; but that could have no application in this instance, since, as above pointed out, if Fugate had actual knowledge of the record or even if by research he had found it, he would in the circumstances have necessarily concluded that any claim Bailey was making under the deed had been abandoned.

It is our conclusion that appellees' plea of estoppel is fully sustained by the evidence.

In passing we may say that the argument of counsel and much of the evidence relates to appellees' plea of forgery. Unquestionably much of the evidence to sustain this plea was incompetent, but without going into detail we deem it sufficient to say that, when the incompetent is excluded from consideration, the evidence, proven facts, and circumstances and inference naturally and reasonably arising therefrom would be sufficient to sustain the judgment on that theory of the case.

Coming to appellants' plea of limitation there is no showing that there has ever been any development or attempt to develop oil, gas, or minerals and, apart from the record of the conveyances, assignments, and leases under which appellants assert title, there is little to substantiate their claim, and on the whole the evi-

dence falls far short of sustaining such a plea; and, without entering into unnecessary discussion of the volumes of evidence which we have read and carefully considered, we are constrained to hold that it likewise signally fails to sustain appellants' plea of laches or estoppel.

Judgment affirmed.